IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LIESA M-B.,[1]                                        Case No. 1:22-cv-1213-MK

          Plaintiff,                          OPINION & ORDER

     v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

          Defendant.

KASUBHAI, Magistrate Judge:

     Plaintiff Liesa M-B. brings this action for judicial review of the Commissioner of Social

Security's ("Commissioner") decision denying her applications for Disability Insurance Benefits

(DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security

Act ("the Act"). This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

reasons below, the Commissioner's final decision is REVERSED and REMANDED for further proceedings.

## PROCEDURAL BACKGROUND

Plaintiff's claims for SSI and DIB were denied initially and upon reconsideration. Tr. 171-75, 187-92. She requested an administrative hearing and appeared before an administrative law judge (ALJ) on February 12, 2020. Tr. 57-84.[2] In a written decision dated March 18, 2020, the ALJ denied Plaintiff's claim for benefits. Tr. 149-64. Plaintiff petitioned the Appeals Council for review, and the Appeals Council remanded to the ALJ for a new hearing to re-consider testimony and solicit further vocational expert testimony to consider claimant's use of an assistive device. Tr. 165-68. The ALJ conducted a second hearing on March 22, 2021, soliciting further testimony from Plaintiff and a vocational expert, and issued a decision denying Plaintiff's claim for benefits on May 3, 20201. Tr. 12-29. The Appeals Council denied Plaintiff's subsequent petition for review, rendering the ALJ's decision final. Tr. 1-6. This appeal followed.

## FACTUAL BACKGROUND

Born in November, 1961, Plaintiff was 56 years old when she applied for benefits. Tr. 311. She alleged disability as of April 27, 2018, due to combined impairments of osteoarthritis, degenerative disc disease, inflammatory arthritis, fibromyalgia, and depression. Tr. 16. Her date last insured was March 31, 2019. Tr. 16.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v.*

---

[2]"Tr." refers to the Transcript of the Social Security Administrative Record, ECF No. 7, provided by the Commissioner.

*Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§

404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), which is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ's DECISION

At step one, the ALJ determined that Plaintiff had engaged in substantial gainful activity from July 2018 through September 2018, but not at any other time since the alleged onset date. Tr. 18. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "osteoarthritis, degenerative disc disease, inflammatory arthritis, and

fibromyalgia." Tr. 18. However, the ALJ determined that Plaintiff's impairments did not meet or

medically equal the severity of a listed impairment. Tr. 19. The ALJ concluded that Plaintiff has

the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§

404.1567(a), 416.967(a), with the following limitations:

> [she] can occasionally climb ramps and stairs, but never climb ladders, ropes, or
> scaffolds. The individual can occasionally stoop, kneel, and crouch, but never
> crawl. The individual can frequently, but not constantly, handle and finger
> bilaterally. The individual can tolerate occasional exposure to extreme
> environmental heat and cold, wetness, and humidity. The individual can tolerate
> occasional exposure to pulmonary irritants. The individual can tolerate no
> exposure to workplace hazards such as unprotected heights, and exposed, moving
> machinery. The individual requires the use of a 2-wheeled walker when
> ambulating 10 feet or more.

Tr. 19-20. At step four, the ALJ found Plaintiff could return to her past relevant work as a

customer complaint clerk or travel clerk as those positions were actually performed. Tr. 23.

Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 23.

In this appeal, Plaintiff argues that the ALJ erred by (I) failing to assess whether her

spinal impairment met Listing 1.15, (II) erroneously discounting her symptom testimony, (III)

erroneously discounting lay witness testimony, (IV) improperly assessing Dr. John Malleis's

medical opinion, and (V) failing to support his step four conclusion with substantial evidence. Pl.

Br., ECF No. 8 at 1-18.

## DISCUSSION

### I.   Step Three

Plaintiff first argues the ALJ erred by considering her spinal impairment under outdated

Listing criteria at step three. Pl. Br. at 10-12. Specifically, she argues the ALJ assessed whether

her degenerative disc disease met Listing 1.04, which was replaced by Listing 1.15 on April 2,

2021, when the SSA revised the criteria in the Listings of Impairments. *See* Revised Medical

Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78164, 78179–80 (Dec. 3, 2020). Ordinarily, the listing requirements that are in effect when a claimant filed his or her application govern. *Maines v. Colvin*, 666 F. App'x 607, 608 (9th Cir. 2016). But the SSA made clear that its new Listings were to be applied "to claims that are pending on or after the effective date," as this case was on April 2, 2021. 85 Fed. Reg. at 78164. Defendant does not contest that the ALJ applied the incorrect Listing to Plaintiff's spinal impairment at step three. Def. Br. at 2-3. The Court finds the ALJ erred, therefore, in analyzing Plaintiff's spinal impairment under the outdated Listing 1.04, instead of its updated counterpart, Listing 1.15.

Although the ALJ erred by considering an outdated Listing, that error was harmless. An error is harmless if it is "inconsequential to the ultimate non-disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). "The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). Plaintiff argues the ALJ's step three error was harmful because her impairment meets the criteria of the newly-adopted Listing 1.15, but fails to meet her burden to show the ALJ harmfully erred. As a starting point, the relevant criteria in Listings 1.04 and 1.15 are the same: to show her spinal impairment met or equaled the severity of 1.04 *or* 1.15, Plaintiff had to show "[s]ign(s) of nerve root irritation, tension, or compression, consistent with compromise of the affected nerve root. *Compare* Listing 1.04A *with* Listing 1.15(B)(2). Either Listing required Plaintiff to adduce evidence of positive straight leg raise testing in both sitting and supine positions for a 12-month period. *Ibid.* In finding that Plaintiff's spinal impairment did not meet Listing 1.04, the ALJ noted that the record "does not demonstrate nerve root compression" or "positive straight leg raising tests." Tr. 19. Plaintiff argues the record contains this information, but neither of her citations reflect the necessary straight leg raise test

results over a 12-month period that would support a finding that her impairment met or equaled

either the outdated Listing 1.04 or the updated Listing 1.15. *See* Pl. Reply at 3 (citing two

examples of positive straight leg raise tests from July and August, 2018, Tr. 995, 1362). In fact,

as the ALJ correctly pointed out, the record shows Plaintiff had several negative straight leg raise

tests during the relevant period in 2019, 2020, and 2021. Tr. 1384, 1401, 1421, 1436. Plaintiff

does not dispute these negative tests, or point to any other evidence that would support a finding

that her impairment met Listing 1.15 for the required 12-month period. The ALJ's error was

therefore harmless. He considered the appropriate evidence, and Plaintiff cannot show that her

spinal impairment would meet or equal a Listing were the ALJ to consider the updated Listing

1.15.

## II.    **Symptom Testimony**

Plaintiff also argues that the ALJ erred in rejecting her symptom testimony. Pl. Br., ECF

No. 8 at 13-15. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL

5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom

evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other

grounds). First, the ALJ determines whether there is "objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or other

symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such

evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and

convincing reasons in order to reject the claimant's testimony about the severity of the

symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient."

*Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834

(9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

At the hearing on February 12, 2020, Plaintiff explained that she has severe back and leg pain which make it hard for her to walk. She uses a walker. She takes medications for pain which make her drowsy and do not allow her to drive. Plaintiff also said that she has COPD and this makes it difficult to breathe. The difficulty breathing and the physical pain make concentration difficult and contribute to Plaintiff's depression. Tr. 68. Plaintiff described the depression as involving crying spells and not wanting to socialize. She has been offered surgery for her back, but because Plaintiff lives in a small travel trailer and has to move often, she was concerned that she would not have a stable place to heal after surgery. Tr. 69. Plaintiff has to take breaks to lie down every day. She is able to bathe and get dressed, but this process takes a very long time due to her pain. Tr. 70. She uses a walker outside the house, but her walker does not fit inside the travel trailer where she lives. Tr. 71. Plaintiff can do a few dishes if she holds onto the counter, but not many other household tasks. Tr. 72. She has been treated for depression by her primary care provider. Plaintiff explained that she cannot sit for long periods because of her back pain. Tr. 74. After about an hour to an hour and a half she has to get up and walk around to relieve

pain. Plaintiff's prior job required a wired headset to prevent hacking, so she was not able to take the breaks she needed away from her work station. Tr. 75-76.

At the second hearing on 3/22/21, Plaintiff reiterated that she cannot drive because of the medications she takes for her pain. Tr. 37. In 2018, she tried to continue working at her last job with a work-from-home arrangement. Tr. 40. Plaintiff said she still uses a walker. Tr. 41. Plaintiff described using an electric cart at the grocery store. She has back and knee pain and feels unsteady when she tries to walk. Tr. 44. Plaintiff does very few household chores. She has to take pain medication every 4 hours. Tr. 45. Plaintiff had a consultation with her doctor about back surgery, but she was told that the chances of the surgery helping her condition were only 20 percent and felt this was too risky. She also takes multiple medications for her other conditions and does not heal quickly and was worried that this would add further risk to any surgery. Tr. 46-47.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 20. However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 20. Specifically, the ALJ found Plaintiff's symptom allegations were inconsistent with her conservative treatment record, and that Plaintiff's daily activities conflicted with her symptom allegations. Tr. 20-25.

*A. Conservative Treatment*

In some circumstances, a claimant's treatment record can form the basis upon which to reject a claimant's testimony. *See, e.g., Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) (noting that "conservative treatment" was sufficient to discount the claimant's testimony

regarding allegedly disabling pain); *Molina v. Astrue*, 674 F.3d 1104, 1113–14 (9th Cir. 2012) ("[A] claimant's failure to assert a good reason for not seeking treatment ... can cast doubt on the sincerity of the claimant's pain testimony.") (citation omitted). However, adjudicators are required to consider "any explanations that the individual may provide, or other information in the case record, that may explain" the claimant's failure to follow a treatment plan. *Orn*, 495 F.3d at 638 (quotation omitted). Defendant argues that the ALJ properly rejected Plaintiff's testimony based on her history of conservative treatment. Def. Br. at 11-12 (citing Tr. 22). The ALJ noted that Plaintiff's treatment "has been essentially routine and conservative in nature," and she had not "received the type of medical treatment one would expect for an individual with the claimant's alleged limitations." Tr. 22.

Here, Plaintiff's treatment history was not a clear and convincing reason to reject her testimony because the ALJ failed to articulate his reasoning with sufficient specificity for this court to adequately review the decision. When discounting symptom testimony, an ALJ's decision "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991)(citation and internal quotation marks omitted). In this context, that means an ALJ must "identify the testimony she found not credible," and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. When relying on Plaintiff's allegedly conservative treatment to discount her testimony, the ALJ failed to connect the dots. The written decision summarily concludes that Plaintiff's treatment is not generally what one would expect for an individual with her alleged limitations, and that the

treatment was "routine and conservative." Tr. 22.[3] This does not identify which of Plaintiff's statements or what testimony is supposedly undermined by the record, or what parts of the record undermine it. Ultimately, the ALJ's decision does not identify specific treatment Plaintiff should have sought (but didn't), and what aspects of Plaintiff's testimony are less reliable as a result. That leaves this reviewing court to surmise which "testimony she found not credible" and what "particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to provide such clear analysis is error, and the Court finds conservative treatment was not a sufficiently clear and convincing reason for discounting Plaintiff's symptom testimony about her limitations.[4]

### B. Daily Activities

The ALJ also discounted Plaintiff's subjective symptom testimony because it was inconsistent with her daily activities. Tr. 23. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective

---

[3] Defendant attempts to bolster the ALJ's reasoning by identifying certain aspects of Plaintiff's care that were conservative, or by arguing that Plaintiff neglected to follow treatment advice. Def. Br., ECF No 11 at 11-12. Even if this were a compelling reason, the ALJ did not rely up on it. *See* Tr. 22. Defendant makes several arguments about the conservative nature of Plaintiff's treatment, but cannot point to where the ALJ identified that rationale in his opinion. *Id.* Since the Court considers only those reasons relied upon by the ALJ, not Defendant's *post hoc* rationalizations, the Court will not consider Defendant's argument at his invitation. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (stating the court "is constrained to review the reasons the ALJ asserts").

[4] Had the ALJ provided a sufficiently specific rationale for this Court to review, he still neglected to consider the possible reasons that Plaintiff's might have had only conservative or routine treatment for her impairments as required by Social Security Ruling 16-3p.

symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to his or her credibility).

The ALJ failed to adequately identify transferable work skills or inconsistencies between Plaintiff's daily activities and symptom testimony, and therefore erred. The Ninth Circuit has instructed that a modest level of activity is not sufficient to reject subjective complaints. *Vertigan*, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact that a Plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled") (quoting *Fair*, 885 F.2d at 603). Summarizing Plaintiff's daily routine from 30,000 feet, the ALJ noted that Plaintiff "reported that she is able to perform personal care, prepare meals, take care of pets, drive a vehicle, go shopping, and manage money." Tr. 22 (citations omitted). The ALJ's discussion of Plaintiff's household chores failed to explain "what symptom testimony [was] not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *see Dodrill*, 12 F.3d at 918. As this Court has explained, "an ALJ's mere recitation of a claimant's activities is insufficient to support rejection of the claimant's testimony as a matter of law." *Shirley C. v. Comm'r, Soc. Sec. Admin.*, No. 1:20-cv-01212-MK, 2021 WL 3008265, at *6 (D. Or. July 15,

2021). Other than summarizing Plaintiff's activities, the ALJ did not explain how the listed household chores or occasional ability to drive undermined Plaintiff's subjective symptom testimony about exertional limitations; the ALJ merely concluded that these activities were inconsistent with Plaintiff's allegations. Tr. 28. This was error.

In sum, the ALJ erred in rejecting Plaintiff's subjective symptom testimony because he failed to provide specific, clear, and convincing reasons as to why her testimony contradicted, or was undermined by, the objective medical record and her activities of daily living.

## III.    Lay Witness Testimony

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine*, 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported

reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

Plaintiff's husband completed a questionnaire describing Plaintiff's limitations. He noted Plaintiff has constant back and knee pain, which makes it hard for her to walk, shower, lift, or sit for long periods of time. Tr. 419. He noted Plaintiff is unable to walk for more than a short distance. She has difficulty getting dressed and bathing and has to do this very slowly and sit in a shower chair. She needs help getting off of the toilet. Tr. 420. Plaintiff needs reminders to take her medications. She is not able to stand for long enough to cook a full meal. She needs help with household chores and has to take a lot of breaks to rest. Tr. 421. Plaintiff does not go out much because it is hard for her to get around. The witness checked lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and memory as abilities affected by Plaintiff's conditions. Tr. 424. He noted Plaintiff has side effects from her medications, including swelling, bruising, memory impairment, and sleepiness. Tr. 426.

The ALJ did not consider this testimony, and it was error for him to fail to do so. Although Defendant suggests it is an "open question" whether ALJs are still required to consider lay witness evidence under the revised regulations, *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630 at *3 n.1 (9th Cir. Dec. 27, 2022) (unpublished), this Court still requires ALJs to provide germane reasons for dismissing lay witness testimony. *Nichole M. v. Comm'r, Soc. Sec. Admin.*, No. 2:22-CV-00645-MK, 2023 WL 2889777, at *8 (D. Or. Apr. 11, 2023). The ALJ did not provide any reason, let alone a germane one, for disregarding Plaintiff's husband's testimony, and therefore erred. Defendant argues the error was harmless because Plaintiff's husband's testimony mirrored her own, and the ALJ offered justifications for discounting Plaintiff's testimony. Def. Br. at 14. As discussed above, however, the ALJ failed to supply

legally sufficient reasons for rejecting Plaintiff's subjective complaints, so those rationales cannot cover for his failure to address the lay witness testimony.

## IV.    Medical Opinion Evidence

Plaintiff also argues that the ALJ erred in rejecting aspects of Plaintiff's treating doctor John Malleis, M.D.'s medical opinions. Pl. Br. at 12-13. For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Instead, the agency considers several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Under this framework, the ALJ must "articulate ... how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R § 404.1520c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

A.  *Dr. Malleis*

Dr. John Malleis was one of Plaintiff's treating physicians during her period of alleged disability. Relevant to Plaintiff's allegations before the Court, Dr. Malleis, opined on November 9, 2020, that Plaintiff's impairments included seronegative rheumatoid arthritis, degenerative disc disease of the lumbar spine with herniated discs and radiculopathy, fibromyalgia, depression, and chronic pain. Dr. Malleis further opined that Plaintiff could lift less than 10 pounds both frequently and occasionally. She required a hand-held assistive device to walk. She needed to periodically alternate sitting and standing. He also opined Plaintiff could never climb ladders, ropes, or scaffolds, stoop, kneel, crouch, or crawl. She could occasionally balance. Tr. 1359. Dr. Malleis likewise opined that Plaintiff's ability to reach, handle, and feel was limited. She should avoid even moderate exposure to extreme environmental conditions, noise, vibration, respiratory irritants, and hazards. Tr. 1360.

The ALJ found that Dr. Malleis's opinion was persuasive overall, but found that fewer restrictions on postural activities and exposure to respiratory irritants were necessary. Tr. 21-22. The ALJ found that Dr. Malleis's more significant limitations were unsupported and inconsistent with other evidence of record. Tr. 21-22. More specifically, the ALJ found that Plaintiff's treatment notes showed she could manage "occasional postural activities and at least occasional exposure to respiratory irritants." Tr. 21-22. The ALJ cited several of Plaintiff's treatment notes, including those from Dr. Malleis himself, to support the decision to discount Dr. Malleis's opinion about Plaintiff's ability to lift, stoop, and be exposed to respiratory irritants.

The ALJ adequately discussed the strength of the evidence underlying Dr. Malleis's lifting, stooping, and respiratory opinions and their consistency with other evidence in the record when finding them unpersuasive. The supportability factor requires ALJs to consider the

persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion." 20 C.F.R. § 404.1520c(c)(1). The consistency factor requires the ALJ to assess medical opinions' alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The ALJ reasonably found Dr. Malleis's opinion lacked support from the record because it was internally inconsistent and wanting in objective medical evidence. Tr. 21-22. As to its internal inconsistency, the ALJ contrasted Dr. Malleis's opinion about Plaintiff's difficulty with lifting, stooping and breathing, with treatment notes that reflected denials of, among other things, respiratory symptoms and weakness. Tr. 21-22 (citing Tr. 647, 1055). The ALJ further discounted Dr. Malleis's lifting and stooping opinions because they conflicted with record evidence showing Plaintiff had full range of motion and normal gait. Tr. 21 (citing Tr. 1008, 1056, 1074, 1431). With respect to lifting, the ALJ specifically noted that Plaintiff's ability to lift up to 50 pounds occasionally at her job in April 2017 conflicted with Dr. Malleis's opinion that Plaintiff could only lift 10 pounds occasionally. Tr. 22 (citing Tr. 394, 396 1359). Plaintiff also consistently denied respiratory symptoms to Dr. Malleis, which further undermined his opined limitations on respiratory irritants. Tr. 21, 647, 1055. The ALJ adequately considered the supportability and consistency of Dr. Malleis's opinion by examining the bases for his conclusions, discounting them for their inconsistency with the record.

Even if the ALJ failed to adequately assess the supportability and consistency of Dr. Malleis's opinions, the alleged error was harmless. As indicated above, an error is harmless if it is "inconsequential to the ultimate non-disability determination." *Stout*, 454 F.3d at 1055–56. Plaintiff argues that if Dr. Malleis's lifting, stooping, and respiratory opinions are credited as true, she should be found disabled . Pl. Br. at 12-13. In this case, the ALJ found Plaintiff not

disabled because she could return to her customer complaint clerk or travel clerk jobs as actually performed. Tr. 23. The claimant, either via written report or hearing testimony, is typically the primary source for determining how a job was actually performed. *Pinto v. Massanari*, 249 F.3d 840, 845-46 (9th Cir. 2001). And none of Plaintiff's testimony suggests she would be unable to do her job even if she were as limited as Dr. Malleis opined. Dr. Malleis suggested that Plaintiff could not lift more than 10 pounds, and needed to change positions often. Tr. 1359. Dr. Malleis also opined that Plaintiff was totally unable to stoop or be exposed to respiratory irritants. Tr. 1359. In testimony, Plaintiff described that at her prior relevant work she did not need to stoop, kneel, crouch, or crawl, and was able to alternate between standing and sitting. Tr. 50, 52, 77-78, 400-01. Nor did she describe--or argue in her brief--how a limitation regarding irritants would have precluded her past relevant work as actually performed. *See generally,* Pl. Br., Pl. Reply. In sum, even if the Court adopted those portions of Dr. Malleis's opinions the ALJ discounted as true, it would not undermine the ALJ's ultimate step four non-disability finding. Any alleged error concerning the ALJ's consideration of the medical evidence is therefore harmless.

## V.    Step Four

A claimant has the burden of showing that she can no longer perform her past relevant work. See 20 C.F.R. §§ 404.1512(a), 404.1520(f). Although the claimant has the burden of proof at step four, an ALJ must still make "the requisite factual findings" to support their conclusions. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). Testimony from plaintiff and a vocational expert (VE) serves as substantial evidence for the ALJ's step-four finding. *Id.* An ALJ's determination at step four "must be developed and explained fully" and contain the following specific findings of fact: (1) the claimant's residual functional capacity; (2) the physical and mental demands of the past relevant job/occupation; and (3) that the claimant's residual

functional capacity would permit a return to her past job or occupation. *See* Social Security Ruling 82-62.

Plaintiff argues the ALJ erred at step four by failing to support his decision that she could return to prior relevant work as actually performed with substantial evidence. Pl. Br. at 16-17. Plaintiff argues the ALJ erred in three ways: first, that the ALJ failed to take sufficient vocational testimony concerning her need to use a walker and its impact on ability to perform past work. *Id.* Second, because the VE at the remand hearing testified that some employers of jobs like hers might not allow the use of a walker. *Id.* And third, because the ALJ failed to include "Plaintiff's credible allegations," and those of the lay witness and Dr. Malleis when posing hypotheticals to the VE.

The ALJ erred at step four by failing to adequately lay out the factual findings supporting his decision, but not for the reasons Plaintiff advances. First, Plaintiff's contention that the ALJ did not take sufficient testimony at the March, 2021 hearing is belied by the record. To the contrary, the ALJ asked the VE several questions about whether Plaintiff could return to past relevant jobs given her testimony about reliance on a walker. *See, e.g.,* Tr. 52 ("Q… [W]ould your opinion be that phone center type work could be performed when an individual does need to use a walker? A Generally so, yes."). Second, even though the VE speculated that some employers might hypothetically have an issue with employees with a walker, "the hiring practices of employers are not a relevant disability consideration." *Connors v. Colvin*, 656 F. App'x 808, 810-11 (9th Cir. 2016) (unpublished) (citing 20 C.F.R. § 404.1566(a), (c)(3)). As Defendant rightly points out, work does not even need to be available in significant numbers in the economy for a claim to be denied at step four. Def. Br. at 16 (citing *Barnhart v. Thomas*, 540 U.S. 20 (2003)). Finally, Plaintiff fails to carry her burden at step four to show harmful error

concerning which of her allegations or what lay witness testimony the ALJ erroneously left out. Plaintiff does not point to what testimony, if any, would preclude her from performing her past relevant work; nor did she ask the VE about that at the hearing. Tr. 30-84. Concerning whether the ALJ left aspects of Dr. Malleis's opinions out of the step four hypotheticals, this simply rehashes her prior unsuccessful arguments about the medical evidence. *See Stubbs-Danielson*, 539 F.3d at 1175–76 (rejecting a step five argument that "simply restates" arguments about medical evidence and testimony); *see also Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988) (acknowledging there is no requirement that evidence for which the ALJ has provided specific and legitimate reasons to discount be included in the hypothetical given the VE).

The ALJ did err at step four, however, in failing to make adequate factual findings to support his determination. SSR 82-62 requires ALJs to make specific findings of fact at step four about "the physical and mental demands of the past relevant job/occupation." While Plaintiff testifies about her prior jobs, the ALJ does not make any findings of fact about the rigors of Plaintiff's past relevant work in his opinion. *See* Tr. 22-23. Failure to do so leaves this reviewing Court to speculate about whether the RFC and the VE's answers to hypotheticals actually add up to an ability to perform Plaintiff's past relevant work as customer complaint clerk or travel clerk. *See, e.g., Nimick v. Sec'y of Health & Hum. Servs.*, 887 F.2d 864, 866 (8th Cir. 1989) (remanding case for failure to comply with SSR 82-62 and stating, "The ALJ's discussion of the demands made of a machine operator lacks the specificity and full development and explanation the Social Security regulations and ruling ... require.). On remand, the ALJ must make this factual finding explicitly, and spell out whether Plaintiff's residual functional capacity permits her to return to her past relevant work in accordance with SSR 82-62.

**VI.    Remand**

When a court determines the Commissioner erred in denying benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). In determining whether to remand for further proceedings or the immediate payment of benefits, the Ninth Circuit employs the following "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). If all three requisites are met, the court may remand for benefits. *Id.* However, even if all of the requisites are met, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Id.* at 1021.

Here, the first requisite is met because the ALJ erroneously rejected aspects of Plaintiff's and the lay witness testimony, and erred in part at step four. Further proceedings would be useful for the ALJ to adequately consider the Plaintiff's and the lay witness testimony, reformulate the RFC as necessary, and make specific findings regarding Plaintiff's past relevant work and explain in accordance with SSR 82-62 whether Plaintiff's residual functional capacity permits her to return to her past relevant work at step four.

**CONCLUSION**

For the reasons given above, I REVERSE the Commissioner's decision and REMAND this case for further proceedings.

IT IS SO ORDERED.

DATED: <u>March 8, 2024</u>.

<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge